and turn to the second case on the day calendar, which is U.S.A. v. Neil Dussard, D-U-S-S-A-R-D-18-804-C-R. Good afternoon, Your Honor. Devin McLaughlin for Appellant Defendant Neil Dussard. The first point, as laid out in our brief, is that Mr. Dussard's 924C conviction is unconstitutional because it was based on conspiracy to commit hodgepodge robbery, which, after Davis, clearly makes that an invalid predicate. The government admits it's not a valid predicate, but then argues that there's no plain error because Mr. Dussard's plea to 924 should be treated as if he pled to possessing a firearm in furtherance of a drug trafficking crime, as opposed to the crime of violence. The simplest answer is that that's simply not what he pled to. In the plea agreement, it was specified that he was pleading to the 924C based on a crime of violence. In the plea colloquy, it was specified that the 924C predicate was a crime of violence. His factual allocution at the Rule 11 colloquy addressed the hodgepodge robbery conspiracy as a crime of violence. Based on that, the notion that his plea to the predicate of a crime of violence should be treated as a plea to the predicate of a drug trafficking crime should not be countenanced by this court. We have cited the court to a number of cases which have dealt with this scenario. Frankly, all of them that are similar to Mr. Dussard's case consistently hold that it's reversible error in terms of the plea allocution. Mr. Dussard's factual allocution, which the government relies upon, is cited. It's on page A42 of the appendix. If you look at it, nowhere does he admit to distribution of drugs, nor does he admit to an intent to distribute drugs. The crime of drug trafficking hasn't been satisfied by legally sufficient proof in a way that that can be counted as a valid predicate. I should have probably done this better in my brief, but in terms of reviewing for today's argument, the reality is that the Second Circuit has laid out the analysis for this, and it's not the analysis that the government puts forward. If you look at the two cases, United States v. DEBA and United States v. Rivera, the court has dealt with the same conundrum, which is I have an invalid unconstitutional predicate. There was a valid predicate charged. Are we going to be able to rest it on the valid predicate? It really boils down to what the factual allocation was. In DEBA, they said there wasn't enough because the factual allocation did not admit to the essential elements of what would have been a valid predicate. In Rivera, the opposite. In Rivera, in contrast to Mr. Dussard's case, the individual admitted during the plea colloquy that he was involved in a narcotics conspiracy. He admitted, again, to the elements of a valid predicate, which is why his conviction could be upheld, but that simply didn't happen with Mr. Dussard. Following from both DEBA and Rivera and looking at the factual allocation here, it seems clear to us that he's sitting on an unconstitutional 924C conviction. The second part that I briefed to the court is what do we do now? Because the government has made it clear that their position is that if Mr. Dussard is successful on appeal, he faces reindictment. Reindictment includes the count to dismiss drug trafficking crime with a 10-year mandatory min and the five-year 924C, so a mandatory minimum of 15 years. He received 84 months or seven years, and so careful what you ask for in terms of taking this appeal. First, we don't believe this is asking for an advisory opinion at all. Advisory opinion really boils down to is there a case or controversy. Their definition is a definite and concrete controversy touching legal relations of the parties having adverse interests. Clearly, that exists here. I cited the court to a district court case from the Southern District, Katie, which is really on all fours. There, the defendant wanted to go ahead and file a 2255. Government said, if you do, you're going to be breaching your plea agreement, and we're going to reindict you. And he filed a DJ action saying, what's going to happen if I file it? Government made the same argument. There's no case or controversy, and the district court rejected that saying, well, yes, there is. This is very real. I mean, what would you have him do? And I also point the court to the fact that, clearly, the court frequently addresses what they're going to do on remand, even if remand has to do with retrial. Is retrial really going to happen? All the time, the court defines what can happen on remand, and they should here. And I did want to repeat that if the court ends up finding that, yes, the government can reindict, we have asked that the court give Mr. Dussard the opportunity to withdraw his appeal, because then I would have put him in a much worse position than he would have been if he hadn't gone forward with his appeal. I would also reinforce that if the court decides that we're not going to decide this question, that likewise he'd be given the opportunity to withdraw his appeal because the risk of what would happen below may, frankly, outweigh what he would want to do on appeal. But then turning to the third and final issue, Your Honors, which is, okay, can the government reindict him? Opposition, obviously, is that the government cannot reindict him. And there's two ways to approach that. One is to approach it following from the Ninth Circuit law that we cited to the court in Barron and Sandoval-Lopez, which holds, listen, the defendant didn't go ahead and violate the plea agreement. The plea agreement doesn't bar what he did. The plea agreement does bar the government from going ahead and reinstituting the claims that are dismissed. And so, therefore- You have one more minute. Thank you. So, therefore, no, the government cannot reindict. We are strong, Your Honors, that you actually don't need to go that far in terms of deciding it, because here the issue in terms of whether the government can reindict is really governed by the plea agreement. The plea agreement is authored by the government. Ambiguities in the plea agreement are construed against the government. They chose which crimes to drop, which crimes to go forward on. And the controlling provision of the plea agreement, which addresses what's going to happen if something gets reversed on appeal, if you look at the language, the language says, and obviously I emphasize it a lot, it's in the briefs, it's further agreed that should the conviction following the plea of guilty be vacated for any reason. Our position is that the conviction has not been vacated because he still stands convicted on count one. He's not challenging count one. He'll get resentenced on count one. We're fine with that. The government did not draft the plea agreement to say should any count of conviction be vacated, then we're free to go ahead and reindict. And if you just simply contrast the conviction with any counts of conviction, I don't know how you get around the notion that there definitely is an ambiguity in that language, and that ambiguity needs to be construed against the government. And by virtue of that ambiguity, the government cannot go forward and reindict. And those are my points, Your Honors. Thank you. Thank you very much, counsel. Judge Kears, any questions? Yes. In the appendix that you've submitted to the court, the judgment on count three says that your client was convicted of Was that the original judgment? That's the original judgment that was entered. Has that been ‑‑ was there an objection to that or an attempt to get that corrected? And, Your Honor, which page of the appendix? But I think you're pointing to the judgment of conviction. The judgment of conviction A9. Okay. That's the description of count three. Possession of firearm and furtherance of narcotics conspiracy. So, no, I didn't see any effort to correct that. I wasn't counsel below. But regardless, I did not see that. If one looks at the plea agreement and the colloquy and not how it was subsequently described in the judgment, I don't think there's any dispute that what was presented was a crime of violence as opposed to the narcotics conspiracy aspect. But I had not caught on to that, Your Honor. And, no, it was not corrected. Was there any objection to the description in the presentence report that described the quantity of narcotics that was to be stolen? I think it was 12 kilograms. And the statements among the co‑conspirators that they were planning to sell what they stole. The answer, Your Honor, is that there were not. The advocate's question or argument is what happened at sentencing and what's in the PSR does not go in any way, shape, or form to whether there was an allocution, i.e., admission, i.e., proof of the requisite elements of the crime. I know I saw in the 28J letter from the government reference in the Meisel case to the judge looking at, well, what happened at sentencing? What happened in the PSR? That was in the context of 2255 resolution where the defendant needed to demonstrate actual innocence. Here, if you look, again, at Biba and Rivera and the Johnson case, which they follow from, the question on whether we're going to substitute a predicate is, A, if it went to trial, was there sufficient evidence of it at trial? Or, B, was it allocated to? None of those cases look at the PSR and sentencing. The answer to the question is factually, yes, but opposition is that it's legally irrelevant. Actually, yes, as in no, there was no objection? No, there was no objection. Good. Thank you. Thank you, Your Honor. Judge Jacobs? The arrest here was in September 2016. Has your client been in jail since then? And what is the time constraints, if any, on the decision of this appeal? Yeah, so he's been in jail since the date of arrest. He remains there. We recognize, Your Honor, the sentence imposed on him was a variance-downward sentence of the 24 months plus the 60, which reached the 84. Obviously, it's a crystal ball. If this gets remanded for resentencing, what a judge would do. But the guideline range on the Count 1 Hobsack robbery conspiracy was 41 to 51 months. And if the government cannot reindict and, therefore, we don't have a 924C, it's going to be kicked up by two levels. So it will be 50-something to 60-something. And so it is not one of those, from our perspective, that the time has already passed, other than the notion that 24 months has passed. But I guess, I mean, I'll be realistic that I expect that the judge, in formulating his sentence, looked at the two different pieces, and that was one basis for the downward variance. But I don't know. But, yes, he's been in jail for that period of time, Your Honor. Thank you. I just wanted to know what kind of time constraint is operating here. Technically, he's outside the 24 months. But, again, I don't know whether that was a function and part of having received the 60 months. This is Judge Koubranis. To follow up on Judge Jacobs' question about, I guess, Count 1, the sentence was 24 months. Is that right? Correct. And that sentence was imposed, I think, on March 15, 2018. Is that right? Honor, about that? I do not know off the top of my head. Sorry. But I'm looking at the docket entries. It appears that. Yes, everything was held on March 15, 2018. So it's conceivable that with respect to Count 1, he has already served the time imposed for Count 1. Correct. And as pointed out, and you could also ask the government because the prosecutor was the one who was there below, I have assumed that he was remanded since the date of arrest. So it's even longer than that. Right. Okay. You drew our attention to the appendix at page 42, which is the transcript, of course, of the Rule 11 hearing, and which is quoted by the government, understandably, at page 6 of its brief. And let me read you the defendant's – the text of what the defendant told the court. At page 842, line 11, it says, On approximately August 2016 to September 8, 2016, I conspired with individuals who possessed firearms in order to steal narcotics at gunpoint from people we believed were drug dealers transporting narcotics. At the time I committed the offense, I knew what I was doing was wrong. Now, why is that not good evidence that your client's allocution included a reference to the narcotics conspiracy? If, in fact, he allocated to the narcotics conspiracy, then I suppose the government would argue and has argued that they don't have to be concerned with the effect of Davis on the Hobbs Act complaint, right?  And under Revere and Biba, if he had allocated to the drug trafficking crime, and frankly, under Johnson, he doesn't have to have been convicted of it. It's enough that he allocutes to it. Here, Your Honor, in terms of the quote, which is the same quote that I referenced as well at the outset of my argument, nowhere does he admit that he intended to distribute drugs or that he had distributed drugs, both of which are one of which, anyway, is a necessary element of an allocation to the drug trafficking crime of possession with intent to distribute. And there are four cases, in turn, to do my homework for argument, four cases that I've cited the court to which have effectively identical allocutions. Brown, the 11th Circuit, said I was doing it for a drug rip for cocaine. The Northern District, California, Brown case that they were robbing a cocaine stash house. Clayton, in the Southern District, said he was robbing cocaine. And Aquino, again, in the 28-J letter, said he was robbing a drug dealer. All those recognize that, yeah, there wouldn't be much more you'd need to add in order to be able to do it, but it simply wasn't done. Robbing drugs is not the same as an allocation to intending to distribute them. I see. So you don't think this is enough to lead to the conclusion that he allocated to a narcotics conspiracy? Correct. The reference to conspiracy in that was the allocation the court was looking for, which is the allocation to the Hobzack robbery conspiracy. And so he allocated to that. He conspired with an individual to possess guns to steal narcotics. That's the Hobzack robbery conspiracy allocation. He mentioned that the target were drug dealers, but so it doesn't establish the elements necessary for the drug trafficking crime predicate. I have one question about this plea agreement and your interest in how, if at all, if we're going to remand, how we do it. You wouldn't. As you know, it's our practice to leave the plea agreement intact. And ordinarily we would vacate only a single non. A single invalid conviction. And that's what you want. Is that right? The order that we are asking for, Your Honor, is we vacate his conviction on count three and remand for resentencing on count one. I see. OK. Thank you very much. We'll hear from the government. Thank you. Good afternoon, Your Honors. May it please the court. My name is Kimberly Ravner, and I represent the United States on appeal. In addition to having represented the United States below. There was no plain error in the court's acceptance of Dussard's guilty plea for violating Section 924C even after Davis. Dussard's conviction remains supported by a valid predicate that was unaffected by Davis using and carrying a firearm and further into the drug trafficking crime as explicitly charged in the count Dussard pled to. Dussard allocated that he used and carried a firearm in order to steal narcotics at gunpoint from persons he believed to be drug dealers, plural, transporting narcotics. Dussard argued through his sentencing that it was the tremendous amount of money that could be gained through selling those drugs that drove his commission of the crime. That was his intent. He carried a gun to obtain a supply of drugs to deal. On this record, it's clear that Dussard's guilty plea is premised on a valid predicate and is supported by an adequate factual basis. And that he would have pled guilty regardless of which of the two predicates were noted by the district court during his allocution. Indeed, Dussard effectively concedes that he can't satisfy one of the prongs of plain error review here because he does not want to withdraw his plea. Should this court decide otherwise, the terms of the plea agreement permit the government to consider its recourse. And that includes potential reinstatement of the Section 924C charge based on that remaining valid predicate before the district court. Dussard was facing a 15-year mandatory minimum sentence for his crimes in this case prior to his guilty plea. He entered into a plea agreement to his great benefit, and he secured a sentence of 84 months. And he did that in express exchange for his acceptance of responsibility to not one, but two crimes. Dussard wants to get out of the plea agreement's obligation, but still keep its benefits. Indeed, he's asking for a premature advisory ruling on this question to give him the option of withdrawing his appeal, because he recognizes that his plea ultimately inert to his benefit. This court should resist the defendant's invitation. I'd be happy to address any questions that the court may have. Judge Kears? You said that at his sentencing, Mr. Dussard said that he made a poor decision because there was so much money involved. Where in the appendix can we find that? I believe it's at approximately appendix page 55, Your Honor, where his counsel explained that he committed the offense because of the temptation of an enormous amount of money that could be obtained by selling the drugs he was going to steal during the robbery. And he discussed further that for 15 to 20 kilograms of cocaine at a price of maybe approximately $30,000 to $40,000 per kilogram, that would be a life-altering amount of money for the conspirators. And that's consistent, of course, with the documented evidence in this case to which Dussard never objected of his participation in conversations regarding the intent to sell these drugs, that that was the purpose of the robbery, and that they had buyers lined up to buy the drugs in advance of the robbery, that that was part of the conspiracy as set forth in the PSR. Thank you. Judge Jacobs? No questions. This is Judge Cabranes. I have one question, which is, of course, this matter of whether the defendant should have a right to withdraw the appeal in the event of whatever action or some action by our court. Can you address that for a moment? Sure, Your Honor. It's our position that that would be premature decision because the government may never take the action that Dussard is talking about. If the conviction is reversed, we'll have to consider all our options concerning how to proceed. And one of those could simply be to proceed to resentencing. Of course, it's our position that the judgment should be affirmed, but that's an option that's available to the government should the court decide otherwise. And another is, of course, that we could rely on the terms of the plea agreement to reinstate the dismissed charges. But none of that has happened yet, so it's not right for decision, and the issue hasn't been squarely presented. It's also an inappropriate manipulation of the appellate process here because Dussard wants to get a ruling about the remedy before he decides to go forward with the claim. And it's no mystery why he wants to do that, Your Honor. He got a tremendous benefit from this plea agreement, including the dismissal of a count carrying a 10-year mandatory minimum. And he's acknowledging to this court that this appeal isn't worth losing that critical benefit. And it's for that same reason that he cannot satisfy his burden on plain error review because regardless of this Davis issue, he would have pled guilty and taken this plea agreement deal every day of the week. Thanks very much. Mr. McLaughlin has reserved some time. Thank you, Your Honors. So briefly, Judge Jacobs, I did confirm that, yes, he's been remanded since September 8, 2016, so the clock has ticked for a long time on that. With regard to the questions that Judge Kearse raised concerning the sentencing and what was in the PSR, et cetera, I want to, I guess, I apologize for repeating myself, but Judge Jacobs' decision in Johnson, which is the one that held that you don't have to have been convicted of the predicate offense in order to be able to sustain a conviction of the 924C, says clearly you need legally sufficient proof in order to be able to do that. And legally sufficient proof in the context of trial is evidence. Legally sufficient proof in the context of a plea is what is allocated to. It's never what's hidden in the PSR. It's never what's said post-plea at sentencing. It's what was allocated to, which is exactly why this circuit and even Rivera has undertaken that type of analysis, what was allocated to, which goes to the third point, because the government continually repeats the mantra that the plain error standard as applied in this context is going to look like, would he have pled anyway? That's not what they did in Rivera. That's not what they did in Biba. And there's a reason for it. My client pled to 924C based on a predicate violent crime offense. And there's no question that he pled to that. It turns out it's unconstitutional. It's the government that's suggesting that, well, we want to sustain it on another unpled to predicate. And in that context, the question is, well, the question is not, would he have pled anyway? The question is, was there sufficient, legally sufficient proof of that offense, which is exactly why that's analysis used in Rivera and Biba. And finally, with regard to the right to withdraw appeal, I know personally in cases that I've had, and I've certainly cited the court to some cases, the court's not overly interested, thankfully, in giving a defendant a pyrrhic victory. He's sitting on an unconstitutional conviction, and he's trying to address that. And if the notion is or conclusion is that we're not going to decide whether you can get reindicted, thankfully, the court has pretty consistently given a winning defendant appellant the opportunity to escape from his own win. And so we would ask the court to do that. And finally, the notion that we're manipulating the appeal process falls a little shallow, at least on my years anyway. And obviously, I recognize I'm an advocate. But basically, the government's position is you, Mr. DuSard, can drop your appeal from what is an unconstitutional conviction or risk the consequences. And that, to me, seems a more apt, potentially more apt description of manipulation. But regardless, I don't want to go too far down that path. So thank you. Thanks very much. Judge Kearse, any other questions? Yeah, one question. What would be the functional difference between allowing your client to withdraw his appeal and are affirming on the ground of no plain error? There would be none. Thank you. Sorry. I mean, if the court's decision is that I lose on the threshold issue, that no plain error has been established, then there is no functional difference. It's over. And his 74, his 84 months stands, and that is what it is. Thank you. Judge Jacobs? No questions. Thanks very much to counsel. We will reserve decision.